MARINO CRUZ LA CORTE y MANUEL DURÁN, recurrentes, *v.* LUIS MOJICA SANDOZ, REGISTRADOR DE LA PROPIEDAD DE CAGUAS, PUERTO RICO, recurrido.

*Número:* O-79-457     *Resuelto:* 15 de febrero de 1980

*Gaspar Gerena Bras,* abogado de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La cuestión a resolver es si son anotables la solicitud para prorrogar un aviso de pleito pendiente (*lis pendens*) y la contestación a una demanda de intervención. Fallamos que es anotable la primera, mas no la segunda.

Los recurrentes, señores Cruz La Corte y Durán, demandaron el 30 de marzo de 1971 a los esposos Cartagena Córdova para obtener el traspaso de determinado inmueble conforme a un contrato de opción de compra. El 15 de febrero de 1974 fue anotado en el Registro de la Propiedad el correspondiente aviso de litispendencia.

El 3 de agosto de 1978 los esposos Deyá Meléndez radicaron una solicitud de intervención en la cual alegan que adquirieron de los esposos Cartagena Córdova el inmueble en disputa por escritura no inscrita de 28 de julio de 1972. Los recurrentes contestaron que los esposos Deyá Meléndez no son terceros de buena fe. Solicitaron además la prórroga de *lis pendens* por cuatro años adicionales o hasta la terminación del pleito.

Presentada la contestación al Registro, el Registrador se negó a efectuar las anotaciones requeridas. Su Nota de Suspensión expresa:

"Suspendida la anotación de este documento luego de haberse notificado el 21 de febrero de 1979, por no ser acto registrable. Al margen de la inscripción 3ra se halla anotada la acción judicial instada por el demandante con todos los efectos jurídicos que tal acto conlleva. Sí se podrá hacer constar la resolución judicial prorrogando la anotación pero no la solicitud hecha en tal sentido."

Los avisos de pleito pendiente y las anotaciones preventivas del género que nos ocupa tienen un historial interesante en

Puerto Rico que arroja luz sobre el asunto a decidir. Antes de 1904 contábamos únicamente con el concepto de la anotación preventiva de nuestra Ley Hipotecaria de 1893.(¹) El Art. 42 de esta Ley, 30 L.P.R.A. sec. 91, dispone en parte:

"Podrán pedir anotación preventiva de sus respectivos derechos en el Registro Público correspondiente:

1° El que demandare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho real. . . ."

En 1904 adoptamos el Código de Enjuiciamiento Civil de Idaho, basado en el de California de 1872 y descendientes ambos, al menos en lo que respecta a la disposición que a continuación examinamos, de un estatuto de Nueva York. El Art. 91 del Código, 32 L.P.R.A. sec. 455, proveía:

"En una acción que afecte al título o al derecho de posesión de propiedad inmueble, el demandante al tiempo de presentar la demanda y el demandado al tiempo de formular su contestación, cuando en dicha contestación se solicite un remedio a su favor, o en cualquier tiempo después, pueden presentar para su anotación al registrador del distrito en que esté situada la propiedad o alguna parte de la misma, un aviso de estar pendiente la acción, que contenga los nombres de las partes, el objeto de la acción o defensa y una descripción de la propiedad afectada por dicha acción. . . ."(²)

■ Este artículo introdujo en Puerto Rico la institución angloamericana del *lis pendens*,(³) la cual persigue fines análogos a los de la anotación preventiva del derecho civil.

---

(¹) Para los orígenes romanos, germánicos y catalanes de esta institución, véanse: Capó Bonnafous, "Apuntes sobre las Anotaciones Preventivas en el Derecho Hipotecario Español", 9 R.C.D.I. 196, 282–84 (1933); J. L. La Cruz y F. de Asís Sancho, *Derecho Inmobiliario Registral*, Barcelona, Bosch, 1968, pág. 264; A. de Cossío y Corral, *Instituciones de Derecho Hipotecario*, 2da ed., Barcelona, Bosch, 1956, pág. 258; J. Gómez de la Serna, en *Enciclopedia Jurídica Española*, 1ra ed., Barcelona, Seix, s.f., "Anotación Preventiva", pág. 780.

(²) Hemos utilizado la traducción que autorizamos en *Manrique de Lara* v. *Registrador*, 23 D.P.R. 864, 865–66 (1916).

(³) Para sus orígenes, véanse: Note, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy*, 39 So. Cal. L. Rev. 108, 109–110 (1966); Land Charges Act 1925, 27 Halsbury's Law of England, 3ra ed., 1971, pág. 685 *et seq.*

Ocurrieron lapsos en el proceso de su adopción. No aprobamos los mecanismos necesarios para reglamentar el aviso de pleito pendiente, situación que sorteamos en *Hernández* v. *Registrador*, 67 D.P.R. 452, 458 (1947). Lo que es más grave, olvidamos que la figura del *lis pendens* en California y Idaho se rige en parte por estatuto y en parte por preceptos del derecho común angloamericano. *MacDermont* v. *Hayes*, 170 P. 616, (Cal. 1917). Únicamente nos apropiamos de la primera parte.[4] Ya que las normas del derecho común angloamericano no se aplican en Puerto Rico en ausencia de ley, *Romeu* v. *Todd*, 206 U.S. 358 (1906), vivimos desde 1904 una versión trunca del *lis pendens*.

■ Aun así, la nueva institución fue de utilidad, pues ofreció una alternativa sencilla a los demandantes y a los reconvinientes en casos apropiados para avisar a terceros de sus reclamaciones respecto a determinados inmuebles. Vistas las numerosas diferencias entre el aviso de pleito pendiente a que alude el Art. 91 de nuestro Código de Enjuiciamiento Civil y la anotación preventiva a que se refiere el primer apartado del Art. 42 de nuestra Ley Hipotecaria, retuvimos ambas instituciones.[5] La figura empleada en el caso de autos fue nuestra versión del *lis pendens*.

Para 1923 advertimos una deficiencia importante de estas instituciones. Tanto las anotaciones preventivas como las de aviso de pleito pendiente eran cancelables al terminar el pleito, pero a menudo no se cancelaban y se eternizaban en los Registros, junto a otros gravámenes. Según relata uno de los autores del anteproyecto de ley que pronto corregiría el problema, esta situación dificultaba el comienzo de las operaciones en Puerto Rico del Federal Land Bank of Baltimore, J. Sabater, *Práctica Civil*, T. II, Tip. Yauco, s.f.,

---

[4] Para otro lapso de ese género, véase: *Garriga Trad. Co., Inc.* v. *Century Pack. Corp.*, 107 D.P.R. 519 (1978).

[5] Hemos señalado algunas de estas diferencias en *Padilla* v. *Registrador*, 39 D.P.R. 532 (1929); *Martínez* v. *Registrador*, 101 D.P.R. 308 (1973); *Velázquez* v. *El Registrador*, 27 D.P.R. 268, 270 (1919); *Manrique de Lara* v. *Registrador*, 23 D.P.R. 864 (1916); *Morales* v. *Corte*, 33 D.P.R. 271 (1916).

pág. 634 y ss. Ello causó, según Sabater, la adición de un nuevo artículo, el 388-A, a la Ley Hipotecaria, mediante la Ley Núm. 12 de 29 de agosto de 1923, 30 L.P.R.A. sec. 703. El referido artículo decreta:

"Los registradores de la propiedad, a instancia de parte, autenticada ante notario procederán a cancelar en el respectivo registro:

. . . . . . . .

(b) Las anotaciones de embargo, prohibiciones de enajenar, anotaciones de demandas y cualesquiera otras hechas en virtud de mandamiento judicial que tengan más de cuatro (4) años de anotadas, si no hubieren sido prorrogadas por orden de la corte en que pendieren los casos, por justa causa."

El texto de la nueva ley parecía aplicar en la parte pertinente, tan solo a la anotación preventiva. En *Aguilar* v. *Registrador*, 57 D.P.R. 610 (1940), aclaramos su alcance y lo extendimos al aviso de cuestión litigiosa. En *Hernández* v. *Registrador*, 67 D.P.R. 461, 462 (1947), resolvimos que el *lis pendens* retenía su eficacia, aunque transcurriesen los cuatro años que especificaba esta enmienda a la Ley Hipotecaria, hasta que se solicitase su cancelación. A instancia de parte, el Registrador tiene que cancelar el aviso por extinción del derecho anotado, sin notificación a otras partes y sin tomar en consideración el estado del pleito.[6] Se advertirá el peligro que corre el reclamante cuando solicita una prórroga y los tribunales tardan en concederla. Su aviso de pleito pendiente puede ser cancelado y el inmueble puede ser vendido a un tercero de buena fe sin sombra del antiguo gravamen, consecuencia ajena al propósito del estatuto. Hay un modo sencillo de evitar esta injusticia: anotar la solicitud de prórroga.

Tal es el método usado en España cuando se resolvió corregir en la Ley Hipotecaria de 1944 la situación advertida

---

[6] Independientemente de las disposiciones del Art. 388-A de la Ley Hipotecaria vigente, bajo la nueva Regla 56.7 de las de Procedimiento Civil de 1979 el tribunal puede ordenar la cancelación del aviso de pleito pendiente previa la celebración de vista y prestación de fianza en los casos en que no se ha extinguido el derecho anotado.

en Puerto Rico en 1923. Las solicitudes para prorrogar el plazo de cancelación de las anotaciones preventivas son anotables en España. Art. 86 de la referida ley. R. Casero Fernández, *Leyes Hipotecarias*, 2da ed., Madrid, Aguilar, S.A., 1969, pág. 298. Este propio Tribunal ordenó en *Planellas* v. *Sucn. Planellas*, 58 D.P.R. 939 (1941), la anotación de una prórroga de esta índole. Ya que tanto la anotación preventiva como el *lis pendens* tienen como fin dar aviso de la pendencia del litigio, igual derecho debe asistir al recurrente en este caso.

La nueva Ley Hipotecaria, Ley Núm. 198 de 15 de agosto de 1979, que comenzará a regir al año de su aprobación, ha consolidado la anotación preventiva y el *lis pendens*. Art. 112(1). No nos corresponde en esta ocasión analizar su efecto, ni su relación con las disposiciones de la nueva Regla 56.7 de Procedimiento Civil.

En lo que toca a la anotabilidad de la contestación que presentó el recurrente, la legislación reseñada no la autoriza en su texto o espíritu. El interés del recurrente queda debidamente protegido mediante la anotación de la solicitud de prórroga y de su concesión eventual, si tal llega a ser el caso. Es innecesario practicar anotación marginal alguna sobre las incidencias del litigio. Es responsabilidad del tercero enterarse de ellas al ser avisado del pleito pendiente. El Registro no es crónica de las peripecias de las causas judiciales.

*Por las razones señaladas se ordena la anotación de la solicitud para prorrogar el plazo del aviso de pleito pendiente. Así modificada, confirmamos la nota del Registrador.*

Los Jueces Asociados Señores Martín, Díaz Cruz y Negrón García emitieron opiniones disidentes. El Juez Asociado Señor Dávila no intervino.

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 15 de febrero de 1980

Disiento. A mi juicio, el aviso de pleito pendiente no es una anotación hecha en virtud de mandamiento judicial, no está sometida al rigor del Art. 388-A de la Ley Hipotecaria, 30 L.P.R.A. sec. 703, permanece vigente mientras pendiente permanezca el pleito, y como su duración no tiene límite, no necesita ser prorrogado si el pleito dura más de cuatro años. Por tanto, respetuosamente entiendo que la contienda en que el Tribunal se ha enfrascado en este caso es ilusoria. Explico mi posición.

El aviso de pleito pendiente (*lis pendens*) tiene acceso a los libros del Registro de la Propiedad a través del Art. 91 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 455. Tal aviso no ha requerido intervención judicial ya que la disposición citada sólo prescribía que:

"Cuando en una acción que afecte al título o al derecho de posesión de una propiedad inmueble, el demandante al tiempo de presentar la demanda, y el demandado al tiempo de presentar la contestación o en cualquier tiempo después, pidieren se declare que lo que se reclama es suyo, podrán presentar para su anotación al registrador del distrito en que radicare la propiedad o parte de ella un aviso de la cuestión litigiosa pendiente, el cual contendrá los nombres y apellidos de las partes, el objeto de la demanda o contestación, y la descripción de la propiedad en litigio. Sólo desde el día de la presentación del aviso para ser anotado se considerará que el comprador o la persona que adquiera un gravamen sobre la propiedad litigiosa, tiene conocimiento, para los efectos legales, de la acción pendiente contra las partes designadas por sus nombres verdaderos."

Al respecto, hemos resuelto que la certificación de copia de una demanda expedida a los efectos de la anotación de un *lis pendens* no es un documento expedido por la autoridad judicial. *Calderón* v. *Registrador*, 46 D.P.R. 778 (1934). Asimismo, ha quedado establecido que el citado Art. 91 dispone que los terceros adquirentes de los bienes litigiosos sobre los cuales se ha anotado un *lis pendens* tienen conocimiento, para los efectos legales, de la *acción pendiente* y no

pueden alegar su condición de tercero. Véase *Pueblo* v. *The Fajardo Sugar Co. of P.R.*, 51 D.P.R. 893, 897 (1937).

Lo que constituye una acción pendiente estuvo definido en el Código de Enjuiciamiento Civil hasta el 1958 cuando se aprobaron las Reglas de Procedimiento Civil. Por virtud de las mismas quedó derogada la disposición que contenía la definición aludida, que rezaba así:

"Un pleito se considera pendiente desde que principia hasta su resolución final en apelación, o hasta que haya expirado el tiempo para interponer el recurso de apelación, a menos que se haya cumplido el fallo con anterioridad." Art. 348, 32 L.P.R.A. sec. 1515.

No obstante la derogación de la citada definición de pleito pendiente, es forzoso concluir que su alcance legal no es susceptible de variación. Estando en vigor la citada definición del Art. 348 resolvimos que una interpretación de los Arts. 91 y 348 conjuntamente quería decir que una acción estaba pendiente hasta que se dictara una sentencia que fuera inapelable, por lo que el aviso debía permanecer hasta que no hubiera posibilidad de que se dictara una sentencia a favor del demandante. *Morales* v. *Cruz Vélez*, 36 D.P.R. 242 (1927).([1]) La intención del legislador al permitir la anotación de *lis pendens* durante la pendencia del procedimiento no pudo ser otro que ofrecer una garantía a la parte que solicitara la anotación al efecto de que los terceros quedaren avisados mientras durare el pleito.

Distinto es el procedimiento que rige aquellas anotaciones cuya génesis se predica en la legislación registral. En el Código Hipotecario, se establece el mecanismo formal que habrá de regir sobre las anotaciones preventivas. Aquellas que se relacionan con demandas de propiedad de bienes inmuebles, o con la constitución, declaración, modificación o

---

([1]) En *Cruz Vélez*, supra, la demandante al radicar su demanda obtuvo un aviso de *lis pendens* en el Registro de la Propiedad. El tribunal de instancia declaró la demanda sin lugar, sentencia que fue confirmada por este Tribunal. Estando una apelación pendiente ante la Corte de Circuito federal el demandado solicitó y obtuvo del tribunal de instancia orden de cancelación de los avisos de *lis pendens*, cuya orden revocamos.

extinción de cualquier derecho real, 30 L.P.R.A. secs. 91–92, tendrán acceso al Registro de la Propiedad sólo en virtud de mandamiento judicial. 30 L.P.R.A. sec. 971.([2]) Estas anotaciones preventivas de la Ley Hipotecaria pueden ser canceladas a instancia de parte si tienen más de cuatro años de anotadas y no hubieren sido prorrogadas por orden de la corte en que pendiere el caso, por justa causa. 30 L.P.R.A. sec. 703. El procedimiento pues que ha de seguirse respecto a la anotación preventiva está expresamente prescrito en la ley. Por ello, el interesado no puede prorrogar el término de cuatro años dispuesto por ley sin haberla justificado ante el tribunal.

Cuando el tribunal se demora en proveer con respecto a solicitudes para prorrogar anotaciones de demanda y vence el plazo de cuatro años de vigencia de las mismas, podrían suscitarse problemas. Sin embargo, ello no es pertinente en el caso de avisos de pleito pendiente pues éstas subsisten, sin más, mientras subsista el pleito.([3])

El tratamiento distinto que señalamos es lógico pues, como sabemos, la anotación de pleito pendiente creada por la legislación procesal es una nota marginal que sólo tiene el efecto de notificar a cualquier comprador o adquirente de gravamen de la pendencia de un litigio acerca del título o posesión del inmueble, y que nunca puede convertirse en inscripción, mientras que la anotación de demanda, de estirpe registral, es un asiento principal que puede conver-

---

([2]) A pesar de que tanto las anotaciones preventivas como el aviso de *lis pendens* persiguen objetivos similares, ambas pueden subsistir independientemente la una de la otra, por lo que la parte interesada puede optar por seguir cualquiera de los dos procedimientos. Véase *Martínez* v. *Registrador*, 101 D.P.R. 308, 311 (1973).

([3]) En un recurso adecuado pueden discutirse también las interrogantes de índole constitucional que con relación a los avisos de litispendencia, levanta la opinión disidente del Juez Asociado Señor Díaz Cruz. No obstante, conviene señalar la posibilidad de que el argumento quedara dilucidado al aprobarse las Reglas de Procedimiento Civil de 1979. Estúdiese particularmente la interacción entre las Reglas 56.1, 56.2 y 56.3 y la Regla 56.7. Véase además B. M. González Alegre, *Los procedimientos judiciales de la Ley Hipotecaria*, 3ra ed., Barcelona, 1958, págs. 66–67.

tirse en inscripción y cuya permanencia en los libros del registro debe tratarse con mucha más cautela.([4]) *Martínez* v. *Registrador*, 101 D.P.R. 308, 312 (1973); *Padilla* v. *Registrador*, 39 D.P.R. 532, 541 (1929). Véanse además *Zapata* v. *Registrador*, 40 D.P.R. 564 (1930); *Velázquez* v. *El Registrador*, 27 D.P.R. 268 (1919).

Conviene puntualizar antes de concluir, que el momento en que entre en vigor la nueva legislación hipotecaria, puede representar cambios significativos en cuanto al tratamiento jurídico que debe concedérsele al aviso de litispendencia. Ello, naturalmente, es materia que no debe adelantarse aún.([5])

Considerando, pues, que el aviso de litispendencia que se ha obtenido en el caso de autos conserva aún todos sus efectos; que el Registrador en su nota así lo reconoció expresamente; y que la naturaleza del aviso hace innecesario considerar que éste sea prorrogado, confirmaría la nota recurrida.

---

([4]) *Aguilar* v. *Registrador*, 57 D.P.R. 610 (1940) ignora esta fundamental y destacada diferencia y debe ser revocado.

([5]) Nótese, sin embargo, que tanto en *Padilla* v. *Registrador*, supra, como en *Martínez* v. *Registrador*, supra, señalamos como una de las diferencias fundamentales entre el aviso de pleito pendiente y la anotación preventiva de demanda de propiedad, que para ésta "se requiere que la demanda lo sea de propiedad o de cualquier derecho real" mientras que para aquél basta con que la "acción . . . afecte al título o derecho de posesión, sin que pueda precisarse el exacto sentido del verbo 'afectar', ni la época o tiempo a que el artículo se refiere". *Padilla* v. *Registrador*, a la pág. 539. No obstante, el Art. 112 de la nueva Ley Hipotecaria y del Registro de la Propiedad dispone que puede pedir anotación preventiva de sus derechos no sólo "[el] que reclamare en juicio la propiedad de bienes inmuebles o la constitución, modificación o extinción de cualquier derecho", sino que también aquél "que reclamare en alguna acción *que afecte* al título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos". (Bastardillas nuestras.) Así pues, nuevamente surgen interrogantes en torno a qué relación deberá guardar el Art. 112 de la ley registral con la Regla 56.7 de Procedimiento Civil. Véase D. Martínez Irizarry y H. Brau del Toro, *Ponencia en torno al P. del S. 792 ante Comisiones de lo Jurídico del Senado y de la Cámara de Representantes de Puerto Rico*, 3 de abril de 1979, pág. 7.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 15 de febrero de 1980

En acción civil sobre cumplimiento de un contrato de opción sobre propiedad inmueble contra sus vendedores los esposos Cartagena Córdova, los recurrentes anotaron aviso de demanda (*lis pendens*) bajo el Art. 91 del Código de Enjuiciamiento Civil en el Registro de la Propiedad, el 15 febrero, 1974. En agosto de 1978 intervinieron en el pleito los esposos Deyá Meléndez alegando ser dueños del inmueble con título de dominio no inscrito desde julio de 1972, a lo que contestaron los demandantes recurrentes negando condición de terceros de buena fe en los interventores Deyá y solicitando prórroga por cuatro años adicionales o hasta la terminación del pleito de su anotación sobre cuestión litigiosa pendiente (*lis pendens*). En vez de obtener del tribunal resolución al efecto, según ordena el Art. 388-A de la Ley Hipotecaria, *infra*, los demandantes simplemente presentaron al Registro copia de su contestación a la demanda de intervención en la que se pide dicha prórroga de anotación. El Registrador denegó la anotación de la prórroga y su actuación fue correcta, bien fundada en la Ley Hipotecaria, en la jurisprudencia de este Tribunal y en el principio del debido proceso de ley.

Considerando que la anotación de demanda bajo el Art. 91 del anterior Código de Enjuiciamiento Civil importado de New York vía Idaho y California es en efecto un remedio supletorio o alternativa de la anotación preventiva provista por el Art. 42 de nuestra Ley Hipotecaria, debe integrarse a ésta y regirse en su aplicación por las normas que regulan el remedio autóctono, entre ellas la del Art. 388-A de la Ley, 30 L.P.R.A. sec. 703, que permite la prórroga de la anotación sólo por resolución o providencia judicial y no por mera iniciativa del anotante. Recuérdese que la anotación de demanda atrae el ataque fundado en falta de debido proceso, si se la mira a la luz de jurisprudencia que exige intervención

del juez y oportunidad de vista en temprana etapa en los remedios de aseguramiento de efectividad de sentencia. *Domínguez Talavera* v. *Tribunal Superior*, 102 D.P.R. 423 (1974); *Fuentes* v. *Shevin*, 407 U.S. 67 (1972); *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337 (1969); *Mitchel* v. *Grant*, 416 U.S. 600 (1974); *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U.S. 601 (1975).

Únicamente a través de resolución y orden judicial autorizando la prórroga de la anotación podrá el Registrador tener constancia de legalidad, de protección de los intereses de todas las partes, y de la subsistencia de la reclamación en que se pide continuación del aseguramiento de efectividad de sentencia. Una parte en un pleito, que bien puede haber promovido una acción infundada e injusta, en buen orden jurídico no debe tener el privilegio y el poder de decisión, sin intervención judicial, de mantener trabados los bienes de su demandado.

El peligro que señala la opinión de que el reclamante pierda la anotación de *lis pendens* por tardanza del tribunal en el despacho de la solicitud de prórroga es ilusorio porque la diligencia del demandante puede anticipar y obviar cualquier demora en trámite; y en todo caso dicho riesgo de cancelación y pérdida de aseguramiento no es mayor que el que confronta un acreedor que busca un embargo rápido o una prohibición de enajenar apresurada.Ni en uno ni otro caso puede dejarse la observancia del debido proceso a la pura voluntad del litigante interesado en asegurar su reclamación.

Los fundamentos de endeblez constitucional apuntados y nuestro propio derecho legislado excluyen la adopción de la norma de anotación sin orden judicial que la opinión propone. El vigente Art. 388-A de nuestra Ley Hipotecaria, 30 L.P.R.A. sec. 703, taxativamente exige intervención judicial en la prórroga de la anotación con el siguiente lenguaje: "Los registradores de la propiedad, a instancia de parte, autenticada ante notario procederán a cancelar en el respectivo registro: ... (b) Las anotaciones de embargo, prohibiciones de

enajenar, *anotaciones de demanda* . . . que tengan más de cuatro (4) años de anotadas, si no hubieren sido *prorrogadas por orden de la corte* en que pendieren los casos, *por justa causa.*" (Bastardillas nuestras.) ¿Es concebible que el ejercicio de un derecho remitido a la previa determinación judicial de justa causa, se deje al arbitrio de una parte? La aclimatación en nuestro medio jurídico del Art. 91 del Enjuiciamiento Civil fue rápida, pues ya desde *Morales* v. *Registrador*, 40 D.P.R. 242 (1929), seguido en *Aguilar* v. *Registrador*, 57 D.P.R. 610 (1940), declaramos que tanto dicho aviso de demanda (*lis pendens*) como la anotación preventiva de la Ley Hipotecaria caen bajo la acción extintiva por cancelación del Art. 388-A de la citada Ley, y ambas anotaciones, por tanto, están reguladas en lo que respecta a su prórroga por la exigencia de orden de la corte basada en justa causa.[1] *Aguilar* revocó expresamente a *Fernández* v. *Registrador*, 52 D.P.R. 354 (1937) (Hutchinson, J.) donde se había resuelto que la anotación no caducaba, que duraba por todo el tiempo que durase el pleito, coincidiendo en el efecto final con el criterio de mayoría que ahora confía la vigencia a la voluntad del demandante. El orden legal respecto a prórroga de *lis pendens* se mantendrá en nuestro Derecho inmobiliario porque el Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad (Núm. 198 de 8 de agosto de 1979) incorpora el antiguo remedio del Art. 91 como *anotación preventiva* disponible para quien "reclamare en alguna acción que afecte al título de propiedad inmueble, o [en juicio] sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos"; complementado por el Art. 113 que para las acciones que tengan un derecho real inscrito como base para su ejercicio dicha anotación preventiva sólo requerirá la presentación de copia certificada de la

---

[1] El requisito de previa orden judicial fue cumplido en *Planellas* v. *Sucn. Planellas*, 58 D.P.R. 939 (1941), que en la opinión se cita como resolviendo lo contrario.

demanda, y finalmente el Art. 141 de la nueva Ley Hipotecaria al declarar que las anotaciones preventivas que no tengan término de caducidad podrán cancelarse a los cuatro años de su fecha y que—en cuanto ahora nos concierne—su plazo podrá prorrogarse por *orden de autoridad judicial* por períodos adicionales de cuatro años, siempre que la prórroga sea presentada en el Registro antes de haberse cancelado el asiento.

La anotación de demanda, tanto como los remedios de embargo, prohibición de enajenar y demás provistos por la Regla 56 de Procedimiento Civil (1979) es medida cautelar encaminada a asegurar que de recaer sentencia podrá ejecutarse bajo las condiciones de cumplimiento existentes al tiempo de ser solicitada la anotación. Su carácter de medida privilegiada, libre de fianza, implementada sencillamente con presentación al Registro de copia de la demanda y su irrazonable carga sobre bienes del demandado por la duración del pleito, ha sido atemperado y puesto dicho recurso bajo tutela judicial por la nueva Regla 56.7 que ordena:

"*Aviso de pleito pendiente*

En una acción que afecte el título o el derecho de posesión de propiedad inmueble, el demandante al tiempo de presentar la demanda y el demandado al tiempo de formular su contestación, o en cualquier tiempo después, cuando solicitaren se declare que lo que se reclama es suyo, podrán previa notificación a la parte adversamente afectada, presentar para su anotación al Registrador de la Propiedad del distrito en que esté situada la propiedad o alguna parte de la misma, un aviso de estar pendiente la acción, que contenga los nombres de las partes, el objeto de la acción o defensa y una descripción de la propiedad afectada por dicha acción. Sólo desde el día de la presentación del aviso para ser anotado se considerará que el comprador o la persona que adquiere un derecho sobre la propiedad litigiosa, tiene conocimiento.

El tribunal ante el cual se encuentra pendiente la acción tendrá la facultad para ordenar la cancelación del aviso de cuestión litigiosa pendiente, previa la celebración de una vista y prestación de una fianza en la cuantía que estime razonable, tomando en cuenta la probabilidad de prevalecer la parte actora, el valor de la propiedad o derecho envuelto y las demás circunstancias del caso."

Esta Regla 56.7 se dirige precisamente a establecer un balance equitativo de intereses en la operación o implementación del remedio, proveyendo la intervención judicial y el derecho de la parte afectada a ser oída en vista, en la primera etapa de la anotación y protegiendo la misma de su endeblez constitucional. Fortalecido el remedio por este nuevo esquema de legalidad y debido proceso, es a todas luces regresiva, además de contraria a derecho, la pretensión del recurrente de prorrogarse él solo la anotación que grava a los demandados.

En *Domínguez Talavera*, supra, al rechazar el ataque de inconstitucionalidad a nuestro método de aseguramiento de efectividad de sentencia bajo la Regla 56, sostuvimos que el anatema de *Fuentes* v. *Shevin*, supra, iba principalmente dirigido a los estatutos de reposesión y embargo que confieren inmoderado poder a litigantes privados sin la participación cabal de un juez; a la abdicación por el Estado del control y supervisión de los procedimientos desde un principio. La prórroga de anotación de demanda al libre arbitrio del reclamante reproduce aquel recurso espurio de restricción del derecho de propiedad por la actuación *ex parte* de un litigante, y contraviene nuestra legislación hipotecaria de 1893 que se anticipó a la moderna garantía de debido proceso ordenando en su Art. 388-A que tanto la anotación preventiva de demanda como su prórroga se obtendrían únicamente mediante resolución judicial.

No empece su ubicación en distintos cuerpos de Derecho, la anotación preventiva de demanda y el aviso de pleito pendiente (*lis pendens*) comparten el mismo requisito de legalidad y de intervención del juez en protección de todos los intereses afectados. Tanto la solicitud de anotación bajo la Regla 56.7 como la anotación preventiva son objeto de previa calificación por el Registrador, quien en este caso se ajustó a Derecho al negarle acceso al Registro.

Su nota debe ser confirmada.

—O—

Voto disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 15 de febrero de 1980

No puedo suscribir la opinión del Tribunal. Distinta sería mi consciencia judicial si el recurrente hubiese solicitado la prórroga de la anotación dentro de los cuatro (4) años de estar en vigor la misma, reflejando así una actitud de diligencia en la protección de sus derechos. En dicha eventualidad la anotación de la solicitud de prórroga hubiese sido un verdadero escudo legal al litigante responsable contra las dilaciones características de los trámites judiciales. No obstante, permitir que se anote una solicitud de prórroga hecha con posterioridad al plazo de cuatro (4) años es premiar también la inercia intolerable en la litigación y la duración infinita de los litigios. El demandante que lo dejó transcurrir sin solicitar la prórroga colocó sus protecciones registrales sobre la merced del demandado. De nada puede quejarse.